**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUAN ANIBAL ARGUETA PALMA,<br>Petitioner,<br>v.<br>JEREMY CASEY, Warden of the Imperial Regional Detention Facility,<br>Respondent. | Case No.: 3:26-cv-03345-RBM-VET<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>**[Doc. 1]** |

Pending before the Court is Petitioner Juan Anibal Argueta Palma's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241. (Doc. 1.) For the reasons set forth below, the Petition is **GRANTED**.

## I. BACKGROUND

Petitioner, a citizen of El Salvador, is currently detained at the Imperial Regional Detention Facility in the custody of the U.S. Department of Homeland Security ("DHS"). (Doc. 1 at 4). Petitioner was ordered removed from the United States in 1991, 1993, and 2005 due to prior felony convictions. (Doc. 4 at 2; *see* Doc. 4-1, Ex. 3 at 17.)

On June 2, 2017, an immigration judge ("IJ") denied Petitioner's application for withholding of removal and protection under the Convention Against Torture ("CAT"). (*See* Doc. 1-4, Ex. 3 at 11.) Petitioner filed appealed the IJ's decision with the Board of

Immigration Appeals ("BIA") and filed a motion to reopen his immigration proceedings. (*See id.*) The BIA dismissed Petitioner's appeal on February 23, 2018. (*See id.*) Petitioner was once again removed to El Salvador in March 2018. (*See id.* at 12.)

On February 19, 2019, Petitioner re-entered the United States without inspection and was detained upon entry. (*See* Doc. 4-1 at 5–6.) The U.S. Department of Homeland Security ("DHS") reinstated his prior October 2005 order of removal shortly thereafter. (*See* Doc. 4-1, Ex. 3 at 13.) After an asylum officer determined that Petitioner had a reasonable fear of persecution or torture, Petitioner was placed in withholding-only proceedings on May 21, 2020. (*See* Doc. 4-1, Ex. 6 at 64–65; Doc. 1-4, Ex. 3 at 11 n. 2.) Petitioner then filed a new application in his withholding-only proceedings for withholding of removal and for deferral of removal under CAT. (*See* Doc. 1-4, Ex. 3 at 11–12.)

On October 9, 2020, an IJ denied Petitioner's application for withholding of removal and deferral of removal. (*See* Doc. 1-4, Ex. 3 at 11.) Petitioner filed an appeal of the IJ's withholding-only decision with the BIA. (*See id.*)

On November 2, 2020, an IJ denied Petitioner's request for release on bond based on a finding that Petitioner was "a danger to the community and a flight risk." (Doc. 4-1, Ex. 3 at 16.) Petitioner appealed the IJ's bond decision with the BIA on November 16, 2020 (*see* Doc. 4-1, Ex. 4 at 16), but was released under an Order of Supervision on November 25, 2020, "[b]ecause the Agency ha[d] not affected [his] deportation or removal during the period prescribed by law . . . ." (Doc. 1-2 at 5–7; *see* Doc. 1 at 6.) Petitioner's release was subject to certain conditions including the use of an ankle monitor and his attendance at regular ICE check-ins. (*See* Doc. 1 at 4; Doc. 1-2 at 5–7.) An ICE officer removed Petitioner's ankle monitor during his check-in on March 18, 2022. (Doc. 1 at 4.)

On February 11, 2026, Petitioner was arrested and detained while working as a professional truck driver. (Doc. 1 at 4, 6.) Petitioner claims that ICE agents who conducted the arrest falsely told him the BIA has denied his appeal of the IJ's withholding-only determination on January 31, 2025, but the BIA did not dismiss his appeal until April 20, 2026. (Doc. 1 at 4.)

On February 16, 2026, Petitioner was issued with a Notice of Revocation of Release which states that his release on an Order of Supervision was "revoked pursuant to 8 C.F.R. § 241.13(i) for the following reason[ ]: . . . [c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." (Doc. 1-2 at 3–4.) The Notice further states that Petitioner would be afforded an informal interview on February 16, 2026. (*Id.* at 4.) Petitioner also received a Notice to Alien of File Custody Review ("Notice of Custody Review") indicating that his "custody status will be review on or around May 13, 2026." (Doc. 1-4 at 17.) The Notice of Custody Review states that:

> If ICE has not removed [Petitioner] from the United States within the removal period as set forth in INA 241(a) (normally 90-days of either: 1) your entering ICE custody with a final order of removal, deportation or exclusion, or 2) the date of any final order you receive while you are in ICE custody), ICE's Deciding Official will review [Petitioner's] case for consideration of release on an Order of Supervision. Release, however, is dependent on [Petitioner] demonstrating to the satisfaction of the Attorney General that [he] will not pose a danger to the community and will not present a flight risk.

(*Id.*) Petitioner claims that he has not been spoken to about his release or pending charges as of May 15, 2026. (*See id.*)

On April 20, 2026, the BIA dismissed Petitioner's appeal of the IJ's withholding-only decision. (Doc. 1-4, Ex. 3 at 10–13; *see* Doc. 4-1, Ex. 5 at 20.) On May 4, 2026, Petitioner filed a petition for relief with the Ninth Circuit challenging the IJ's withholding-only determination. (Doc. 4 at 2; *see* Doc. 1-4, Ex. 3 at 3.)

On June 1, 2026, Petitioner, proceeding *pro se*, commenced this action by filing the instant Petition. (Doc. 1.) Respondents filed a Return to the Petition on June 12, 2026. (Doc. 4.) Petitioner has not filed an optional reply brief as of the date of this Order.

## II. <u>LEGAL STANDARD</u>

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal

custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3).

## III. DISCUSSION

Petitioner claims that ICE's revocation of his release under an Order of Supervision and subsequent detention lacked statutory authority in violation of the Fifth Amendment's Due Process Clause, 8 U.S.C. § 1226(a), and applicable regulations set forth in 8 C.F.R. §§ 241.13, 241.4. (Doc. 1 at 3–8.) Respondents do not respond to Petitioner's regulatory violation claims. Instead, that "Petitioner is not entitled to release or a bond hearing" because his detention is still within the six-month presumptively reasonable period of detention and 8 U.S.C. § 1231 "provides for *mandatory* detention of noncitizens with final removal orders." (Doc. 4 at 2.)

As the statutory provision governing Petitioner's detention determines what procedures Respondents must follow, the Court will address this issue first.

### A. Detention Authority

"Section 1226(a) . . . applies only while 'a decision on whether the [noncitizen] is to be removed from the United States' is 'pending'. . . ." *Padilla-Ramirez v. Bible*, 882 F.3d 826, 831 (9th Cir. 2017) (quoting 8 U.S.C. § 1226(a)). By contrast, 8 U.S.C. § 1231(a) "governs the detention, release, and removal of individuals 'ordered removed.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). Section 1231(a) also "applies to [noncitizens] who were removed from the United States but later reentered without authorization, were subject to reinstated orders of removal, and then sought withholding of removal based on fear of persecution in the particular countries designated by their removal orders." *Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021); *see Delkash v. Noem*, Case No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *4 (C.D. Cal. Aug. 28, 2025) ("Detention, release, and removal of individuals ordered removed—including those, like

[Petitioner], with pending 'withholding only' proceedings—is governed by 8 U.S.C. § 1231(a).") (citing *Arteaga Martinez*, 596 U.S. at 578).

In this case, Petitioner was ordered removed in 1991, 1992, and 2005, and his October 2005 removal order was reinstated on February 19, 2019. (Doc. 4 at 2; *see* Doc. 4-1, Ex. 3 at 13.) Petitioner then sought relief through withholding-only proceedings in 2017 and 2020. (*See* Doc. 4-1, Ex. 4 at 17.) Although Petitioner is still in withholding-only proceedings pending the BIA's resolution of his appeal of the IJ's 2020 withholding decision, his "reinstated removal order remains administratively final, [and] he is detained pursuant to [S]ection 1231(a)." *Padilla-Ramirez*, 882 F.3d at 832; *see Guzman Chavez*, 594 U.S. at 526 ("[Section] 1231, not § 1226, governs the detention of [noncitizens] subject to reinstated orders of removal, meaning those [individuals] are not entitled to a bond hearing while they pursue withholding of removal."). Ground 2 for violation of 8 U.S.C. § 1226(a) is therefore **DENIED**.

**B. Due Process**

Petitioner claims his re-detention violates 8 C.F.R. § 241.13(i)(3) and the Fifth Amendment's Due Process Clause because Respondents revoked his release under an Order of Supervision without providing adequate notice or reasons for such revocation. (Doc. 1 at 4–8.) Respondents do not address these arguments.

The detention, and release of noncitizens who have been ordered removed is governed by 8 U.S.C. § 1231. This statute directs the Attorney General of the United States to effect the removal of a noncitizen from this country "within a period of 90 days," also known as the "removal period." 8 U.S.C. § 1231(a)(1)(A). It also authorizes the detention of a noncitizen during the removal period. § 1231(a)(2). Noncitizens who are inadmissible, such as due to a prior reentry after removal, "may be detained beyond the [90-day] removal period," but § 1231 does not mandate their detention. 8. U.S.C. § 1231(a)(6). Instead, the statute is limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States" and "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Where a noncitizen does not

leave or is not removed within the 90-day removal period, the individual, "pending removal, shall be subject to supervision." 8. U.S.C. § 1231(a)(3).[1]

The regulations governing the release and revocation of release of noncitizens subject to a final order of removal are 8 C.F.R. §§ 241.4 and 241.13. Both regulations provide that, upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.13(i)(3), 241.4(l)(1). These regulations " were intended 'to provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release.'" *Ghafouri v. Noem*, No. 3:25-CV-02675-RBM-BLM, 2025 WL 3085726, at *4 (S.D. Cal. Nov. 4, 2025) (quoting *Santamaria Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).

It is well-established that government agencies are required to follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954); *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations.") (quoting *Ramon–Sepulveda v. INS*, 743 F.2d 1307, 1310 (9th Cir. 1984)). This Court has joined most district courts and "determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered." *Azzo v. Noem*, Case No.: 3:25-cv-03122-RBM-BJW, 2025 WL 3535208, at *2 (S.D. Cal. Dec. 10, 2025) (quoting *Rokhfirooz v. Larose*, 804 F. Supp. 3d 1095, 1099 (S.D. Cal. 2025)) (collecting cases).

---

[1] As such, Respondents' argument that Petitioner is subject to "mandatory" detention (Doc. 4 at 2), directly contradicts the Order of Supervision issued by DHS issued which permitted Petitioner's release subject to his compliance with certain conditions. (*See* Doc. 1-2, Ex. 1 at 5–7; *see also* Doc. 1-4, Ex. 3 at 17.)

In this case, the record before the Court indicates that Petitioner did not receive any notice of the reasons for his re-detention prior to his arrest or an opportunity to respond to such reasons. Although both regulations require notice "upon revocation," 8 C.F.R. §§ 241.13(i)(3), 241.4(l)(1), ICE did not provide Petitioner with the Notice of Revocation until five days *after* he was taken into custody. (*See* Doc. 1-2, Ex. 1 at 3–4.) The Notice of Revocation incorrectly states that Petitioner's Order of Supervision was issued "on or around November 18, 2025," but the record shows that the Order of Supervision was issued on November 24, 2020. (*Compare id.* at 3 (Notice of Revocation), *with id.* at 5–7 (Order of Supervision).) Moreover, the Notice of Revocation merely states that Petitioner's "release has been revoked pursuant to 8 C.F.R. § 241.13(i)" because "circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." (*Id.* at 3.) "But 'simply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough.'" *Tan-Gutierrez v. Noem*, Case No.: 3:26-cv-00152-RBM-BJW, 2026 WL 194747, at *3 (S.D. Cal. Jan. 26, 2026) (quoting *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 780 (D. Minn. 2025) (cleaned up); *see also McSweeney v. Warden of Otay Mesa Det. Facility*, Case No. 3:25-cv 02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct. 24, 2025) (granting habeas petition where the petitioner "could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons"). "ICE's conclusory explanation for revoking Petitioner's release 'did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond at the post-detention informal interview.'" *Tan-Gutierrez*, 2026 WL 194747, at *3 (quoting *Diaz v. Wofford*, Case No. 1:25-CV-1079 JLT EPG, 2025 WL 2581575, at *8 (E.D. Cal. Sept. 5, 2025)); *see Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing."). And, as Petitioner notes, the ICE officers who re-detained him inaccurately told him the BIA had denied his appeal of the IJ's withholding of removal decision on January 31, 2025, but the BIA did not deny the

appeal until April 20, 2026—about two months *after* he was re-detained. (*See* Doc. 1 at 4; Doc. 1-4, Ex. 3 at 10–13 (BIA decision).) The Court therefore finds that Petitioner was not provided adequate notice of the reasons for revocation of his release.

In a similar vein, an informal interview is required "*promptly* after [the noncitizen's] return to Service custody." 8 C.F.R. § 241.4(l)(1) (emphasis added); § 241.13(i)(3). The Notice of Revocation states that Petitioner would be afforded an informal interview on February 16, 2026. (Doc. 1-2 at 4.) Petitioner, however, claims that he has not been spoken to about his release or pending charges as of May 15, 2026. (*See* Doc. 1-4 at 17.) And nothing in the record indicates that Petitioner was provided with an interview in connection with the revocation of his release, let alone a "prompt" interview, or otherwise afforded an opportunity to respond to the reasons for his re-detention. *See Hoac v. Becerra*, No. 2:25 cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (finding petitioner was likely to succeed on his unlawful re-detention claim as "there [was] no indication that an informal interview was provided").

Additionally, while the Notice of Revocation of Release indicates that Petitioner's release was revoked under 8 C.F.R. § 241.13(i), there is no evidence that ICE determined Petitioner's removal was significantly likely in the reasonably foreseeable future based on any "changed circumstances." (*See* Doc. 1-2, Ex. 1 at 3.) Section 241.13(i)(2) allows a noncitizen's release to be revoked only if the appropriate official "determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future" and makes that finding "on account of changed circumstances." Petitioner alleges that the ICE officers who re-detained him and an ICE officer at the detention center falsely told him the BIA had denied his appeal on January 31, 2025. (Doc. 1 at 4.) Although the BIA eventually denied his appeal in April 2026, the BIA's decision had not been issued until two months *after* Respondents had already re-detained Petitioner. (*See* Doc. 1-4, Ex. 3 at 10–13 (BIA decision).) "[T]his post-hoc rationalization cannot form the basis of 'changed circumstances' for the purpose of re-detention." *Arostegui-Campo v. Noem*, Case No.: 25-CV-3064 JLS (MMP), 2025 WL 3280886, at *4 (S.D. Cal. Nov. 25, 2025)

(collecting cases).

The Court therefore finds the Government failed to comply with its own regulations. In doing so, ICE deprived Petitioner of his due process rights and prejudiced his interests by failing to afford him the procedural safeguards the regulations were designed to protect. *See Diaz*, 2025 WL 2581575, at *7 ("DHS's failure to follow its own procedural regulations may constitute a due process violation."); *M.S.L. v. Bostock*, Civ. No. 6:25-cv-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025) ("ICE's failure to provide Petitioner with a timely Notice of Revocation or conduct an informal interview until nearly a month after taking [him] into custody is a grave violation of Petitioner's due process rights in that they deprived [him] both of meaningful notice and an opportunity to be heard."). Accordingly, the Petition is **GRANTED**.[2]

## IV. CONCLUSION

Based on the foregoing reasons, the Petition (Doc. 1) is GRANTED. Accordingly:

1. The Government is **ORDERED** to immediately release the noncitizen from custody, subject to his preexisting Order of Supervision.
2. The Government **SHALL NOT** re-detain the noncitizen under 8 U.S.C. § 1231(a)(6) unless and until the Government follows all applicable statutory and regulatory procedures.

**IT IS SO ORDERED.**

DATE: July 24, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

[2] In light of the disposition herein, the Court declines to address the remaining grounds in the Petition for seeking release.